UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD D. MOORE,

                          Plaintiff,

            v.

THE UNITED STATES OF AMERICA,

                         Defendant.

No. 18-CV-3679 (KMK)

OPINION & ORDER

---

Appearances:

Richard D. Moore
Beacon, NY
*Pro se Plaintiff*

Charles Salim Jacob, Esq.
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Pro se Plaintiff Richard D. Moore ("Plaintiff") brings this Action, pursuant to the Federal Tort Claims Act ("FTCA") and state law, against the United States of America ("Defendant"), alleging that he received negligent medical care in November 2015 at HRHCare Hudson Community Health's Beacon Health Center (the "Beacon Health Center"), a federally funded health clinic. (*See* Am. Compl. (Dkt. No. 6).) Before the Court is Defendant's Motion for Summary Judgment (the "Motion"). (*See* Not. of Mot. (Dkt. No. 48).) For the reasons explained herein, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are taken from Defendant's statement pursuant to Local Civil Rule 56.1, (*see* Def.'s Local Rule 56.1 Statement in Supp. of Mot. ("Def.'s 56.1") (Dkt. No. 51)), the exhibits submitted by Defendant, (Decl. of Charles S. Jacob, Esq. in Supp. of Mot. ("Jacob Decl.") (Dkt. No. 50)), as well as Plaintiff's Amended Complaint, (*see* Am. Compl.), and are recounted in the light most favorable to Plaintiff, the non-movant, *see Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Defendant has sent the required Local Rule 56.2 Notice to Plaintiff.  (*See* Cert. of Service; *id*. Ex. A ("Rule 56.2 Notice") (Dkt. Nos. 52, 52-1).)[1]

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted).  Here, Defendant filed and served their 56.1 Statement, (*see* Def.'s 56.1; Cert. of Service), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (*see* Rule 56.2 Notice).  Despite this notice, Plaintiff failed to submit a response to Defendant's 56.1 Statement.  Accordingly, the Court may conclude that the facts in Defendant's 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citation omitted), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y.

In November 2015, Plaintiff had Type 2 diabetes.  (Def.'s 56.1 ¶ 1; *see also* Jacob Decl. Ex. A ("Pl.'s Medical Records"), at US000012 (Dkt. No. 50-1).)  On November 5, 2015, Plaintiff arrived at the Beacon Health Center, where he was seen by Joyce Tibbet, D.O. ("Dr. Tibbet"), and Melissa Kelly ("Kelly"), a lab technician.  (Def.'s 56.1 ¶ 2; *see also* Pl.'s Medical Records, at US000012–15; Jacob Decl. Ex. B ("Tibbet Dep. Tr.") 33 (Dkt. No. 50-2).)  Plaintiff's Medical Records note that the reasons for the appointment were "1. Pre-Visit Planning done for visit/footcheck" and "2. . . . medication refills and follow up."  (Pl.'s Medical Records, at US000012.)

When Dr. Tibbet examined Plaintiff, he appeared not to be in any distress; his heart was functioning regularly, his lungs were clear, he did not exhibit any swelling, and he was alert and oriented.  (Def.'s 56.1 ¶ 4; Tibbet Dep. Tr. 25; Pl.'s Medical Records, at US000012–13.)  Plaintiff did not make any complaints to Dr. Tibbet of dizziness, lightheadedness, or blurred vision.  (Def.'s 56.1 ¶ 5; Tibbet Dep. Tr. 26–27; Pl.'s Medical Records, at US000012–15.)  Because Plaintiff presented no signs of disorientation or ill health during the appointment, no Beacon Health Center provider used a "glucometer" to obtain an instant reading of Plaintiff's contemporaneous glucose level.  (Def.'s 56.1 ¶¶ 5–8; Tibbet Dep. Tr. 30–31, 45.)  Instead, Dr.

---

2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."), *appeal dismissed*, No. 14-2899 (2d Cir. March 13, 2015); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response (citation omitted)); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and quotation marks omitted)).  The Court will therefore consider whether any facts in the record contradict Defendant's 56.1 Statement.

Tibbet ordered certain medication refills and some bloodwork for Plaintiff, including a comprehensive metabolic panel and an "A1c test." (Pl.'s Medical Records, at US000014; *see also* Jacob Decl. Ex. C ("Kelly Dep. Tr.") 33–34 (Dkt. No. 50-3).)

An A1c test measures an individual's average glucose level over the course of a three-month period, and does not reveal the individual's glucose level on any specific day or time. (*See* Kelly Dep. Tr. 37.) Beacon Health Center could run its own A1c test in house through a "DCA Vantage" machine. (*See id*. at 18–19, 32; Pl.'s Medical Records, at US000014.) A comprehensive metabolic panel, on the other hand, measures numerous substances in an individual's blood, such as calcium, sodium, albumin, and glucose levels. (*See* Pl.'s Medical Records, at US000046 (showing results of Plaintiff's comprehensive medical panel).) On November 5, 2015, Beacon Health Center designated the panel to be performed by an outside provider, Bioreference Laboratory, whose couriers picked up patient blood samples from the center and delivered them to the laboratory twice a day. (*See* Kelly Dep. Tr. 23–24, 31–33.) Bioreference Laboratory would perform the analysis and return the results electronically to Beacon Health Center, typically after the patient had already been discharged. (*See id*. at 23–24.)

Following Dr. Tibbet's assessment, Plaintiff went to Beacon Health Center's in-house laboratory, where he met with Kelly, a lab technician. (*See* Tibbet Dep. Tr. 33–34.) For the A1c test, Kelly used a "finger stick," and for the comprehensive metabolic panel, Kelly had to perform a venous blood draw. (*See* Kelly Dep. Tr. 17–18.) Kelly testified that her practice is generally to observe patients as they have their blood drawn and to pay attention to their eyes, breathing, and ability to communicate. (*See id*. at 30–31.) Should Kelly have any concerns about the patient's reaction to the blood draw, her usual practice is to immediately take off the

tourniquet, pull the needle out, stabilize the patient, and yell "code blue" to get the attention of nearby doctors and nurses. (*See id.* at 31.) Such an event would typically be recorded in the patient's chart. (*See id.*) However, nothing in Plaintiff's Medical Records suggests that anything of the sort occurred during his testing with Kelly on November 5, 2015. (*See id.* at 41; *see also* Pl.'s Medical Records, at US000012–15.)

The A1c test that Kelly performed on Plaintiff that day returned a result of "error." (*See* Kelly Dep. Tr. 18–19.) According to Kelly, this could mean that the blood sample used for the test was clotted or had air bubbles, that there was not enough blood for the test, or that the cartridge used to carry the sample was bad. (*Id.* at 19.) The error message is not indicative of the level of glucose in the blood sample. (*Id.* at 19–20.)

Dr. Tibbet saw no reason to retain Plaintiff at Beacon Health Center, so he was subsequently discharged. (*See* Tibbet Dep. Tr. 44–45.) Following his discharge, Plaintiff was in an automobile accident, where his vehicle struck a pole. (*See* Jacob Decl. Ex. D ("Pl.'s Accident Records"), at Beacon 00002 (Dkt. No. 50-4).) Plaintiff was transported to St. Luke's Cornwall Hospital ("St. Luke's"). (*See id.*) Plaintiff's medical records indicate that he was diagnosed with a "fracture at the base of the second proximal phalanx" of his right hand. (*See* Jacob Decl. Ex. E ("Pl.'s St. Luke's Medical Records"), at St. Luke's 00048 (Dkt. No. 50-5).) Plaintiff was discharged from St. Luke's on the same day. (*See id.* at St. Luke's 00039.)

At 6:59 a.m. on November 6, 2015, Beacon Health Center received Plaintiff's metabolic panel results from Bioreference Laboratory. (*See* Kelly Dep. Tr. 35–36; Kelly Dep. Ex. 2 (available at Dkt. No. 50-3).) Among other measurements, the report assigned a value of 24 mg/dL to glucose, while the "reference range" for glucose in the report was 70–99 mg/dL. (*See* Pl.'s Medical Records, at US000046.) At approximately 8:30 a.m., Dr. Tibbet reviewed the

5

panel.  (*See id.* at US000009–10; Tibbet Dep. Tr. 34.)  At this appointment, Plaintiff appears to have told Dr. Tibbet that he "blacked out" and "totaled his car" the previous day.  (Pl.'s Medical Records, at US000009.)  He also told Dr. Tibbet that he took his insulin yesterday but "did not eat at all" and "was not checking blood sugars."  (*See id.*)  The notes also state that Plaintiff's right finger was "lacerated," and that Plaintiff indicated that this "was the only injury."  (*See id.*)  Dr. Tibbet ordered another A1c test, which showed a value of 9.1.  (*See id.* at US000010.)  Dr. Tibbet also noted that Plaintiff should follow-up with an "ortho" in three days for the wound on Plaintiff's hand.  (*See id.*)

Based on the foregoing events, Plaintiff alleges that Defendant deviated from "accepted standards of medical care," (Am. Compl. ¶ 14), that Defendant is liable under the doctrine of res ipsa loquitor, (*id.* ¶ 19), and that Defendant is liable to Plaintiff under the doctrine of "Prima Facie Tort," (*id.* ¶ 25).

B.  Procedural History

Plaintiff, who was counseled at the time, commenced this Action on April 26, 2018 by filing the Complaint.  (*See* Compl. (Dkt. No. 1).)  Plaintiff filed the Amended Complaint on June 6, 2018.  (*See* Am. Compl.)  Defendant Answered on October 22, 2018.  (*See* Answer (Dkt. No. 15).)  Following an Initial Conference on December 12, 2018, the Court issued a Case Management Plan and Scheduling Order.  (*See* Order (Dkt. No. 19); Dkt. (minute entry for Dec. 12, 2018).)  The case was referred to Magistrate Judge Paul E. Davison for general pretrial matters, including discovery.  (*See* Order (Dkt. No. 20).)

On September 17, 2019, Defendant filed a Pre-Motion Letter seeking leave to file a motion for summary judgment.  (*See* Dkt. No. 35.)  Plaintiff was ordered to respond by September 30, 2019.  (*See* Dkt. No. 36.)  However, instead of responding to Defendant's

substantive arguments, Plaintiff's counsel filed a letter indicating that he wished to be relieved as Plaintiff's counsel because he had "provided very specific advice . . . regarding . . . the only legally justifiable course of action," but that Plaintiff was "refusing to follow" it. (*See* Dkt. No. 37.) Plaintiff's counsel filed a formal Motion To Withdraw, (Dkt. No. 39), which was granted by the Court, (Dkt. No. 41). The Court provided Plaintiff with 30 days to obtain new counsel. (*See id*.) Over a month later, the Court had not heard anything from Plaintiff, and no new counsel appeared on the docket, so the Court issued an Order To Show Cause as to why the Action should not be dismissed for failure to prosecute. (*See* Order To Show Cause (Dkt. No. 44).) Following Plaintiff's failure to appear at a scheduled Status Conference, the Court issued another Order To Show Cause on December 18, 2019. (*See* Order (Dkt. No. 45).)

On January 6, 2020, Plaintiff responded and stated that he wished to continue the Action and that he would proceed pro se. (*See* Dkt. No. 46.) In response, the Court set a briefing schedule for the instant Motion. (*See* Dkt. No. 47.)

Defendant filed its Motion on February 6, 2020. (*See* Not. of Mot.; Jacob Decl.; Def.'s 56.1; Cert. of Service; *see also* Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 49).) Plaintiff did not respond in a timely fashion. In response to a letter from Defendant asking the Court to consider the Motion fully submitted, (Dkt. No. 53), the Court gave Plaintiff a final deadline of April 30, 2020 to file an opposition, (Dkt. No. 54). Plaintiff has failed to respond, and, and as requested by Defendant, (Dkt. No. 55), the Court thus deems the Motion fully submitted, (Dkt. No. 56).

II.  Discussion

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso*, 691 F.3d at 230 (quoting Fed. R. Civ. P. 56(c)(4)).

9

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court."). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

10

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

### B.  Analysis

#### 1.  Medical Malpractice Claim

Plaintiff's first cause of action is described as "negligence and deviations from the accepted standards of medical care" by Defendant.  (Am. Compl. ¶ 14.)  The Court interprets this as a claim for medical malpractice, which under New York law, requires a showing of "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." *Junger v. Singh*, 393 F. Supp. 3d 313, 321 (W.D.N.Y. 2019) (quotation marks omitted) (quoting *Ongley v. St Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018)).[2]  In medical malpractice cases, "it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of [medical]

---

[2] The Court notes that New York law is made applicable to FTCA claims by 28 U.S.C. § 2674.  *See Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991) ("[T]he FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred . . . .").

11

malpractice," unless "the alleged act of malpractice falls within the competence of a lay [factfinder] to evaluate." *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987) (quotation marks omitted) (collecting cases); *see also Ongley*, 725 F. App'x at 46–47 ("To survive summary judgment, . . . [t]he plaintiff must present expert testimony, and the expert's opinion must demonstrate the requisite nexus between the malpractice allegedly committed and the harm suffered." (citations and quotation marks omitted)); *Vivar v. City of New York*, No. 18-CV-5987, 2020 WL 1505654, at *15 n.14 (S.D.N.Y. Mar. 30, 2020) (same); *Junger*, 393 F. Supp. 3d at 321 (same) (collecting cases). Acts of malpractice that may fall within a lay factfinder's purview must be "clear and obvious" deviations from standard medical care. *Sitts*, 811 F.2d at 740. Examples of such obvious deviations are "when a dentist pulls the wrong tooth or when a patient undergoing surgery to a particular body part incurs an injury to a different body part." *Winters v. United States*, No. 10-CV-7571, 2013 WL 1627950, at *7 (S.D.N.Y. Apr. 16, 2013) (citation omitted), *appeal dismissed*, No. 13-1771 (2d Cir. Aug. 22, 2013).

Plaintiff's claim does not fall within the category of a clear and obvious deviation such that it may be resolved by a lay factfinder without expert testimony. Therefore, his claim cannot survive summary judgment. The record shows that Plaintiff showed no outward signs of physical distress or disorientation during his appointment on November 5, 2015. (*See* Def.'s 56.1 ¶¶ 4–5; Tibbet Dep. Tr. 25–27, 44–45; Kelly Dep. Tr. 30–31, 41; Pl.'s Medical Records, at US000012–15.) Although the A1c test returned a reading of "error," (Kelly Dep. Tr. 19), it would not be "clear and obvious" to a lay factfinder, *Sitts*, 811 F.2d at 740, without expert testimony, whether Kelly or Dr. Tibbet should have reconducted the A1c test when Plaintiff exhibited no other signs of glucose problems, especially where an error message was indicative of technical problems with the sample and not of abnormal glucose levels, (*see* Kelly Dep. Tr.

12

18–19). Moreover, Defendant has presented evidence that the A1c test reflects a three-month average of glucose levels and, therefore, would have been unlikely to influence a contemporaneous discharge decision, anyway. (*See id.* at 37–38.)[3]  Whether Kelly or Dr. Tibbet should have delayed Plaintiff's discharge or taken other medical steps, despite no outward signs of abnormal glucose levels, is beyond the grasp of a lay factfinder. *See Ross v. United States*, No. 15-CV-1094, 2018 WL 1870470, at *2, 4 (N.D.N.Y. Apr. 17, 2018) (explaining that even a pro se plaintiff's medical malpractice claim cannot survive summary judgment where the plaintiff offered only her own "opinions regarding procedures and treatment" the decedent should have received, and could not provide expert testimony to support her contention that poor cardiological care resulted in the decedent's sudden death at home); *DeLorenzo v. St. Clare's Hosp. of Schenectady, N.Y.*, 892 N.Y.S.2d 678, 680 (App. Div. 2010) (affirming lower court's grant of summary judgment for the defendant where, inter alia, the plaintiff failed to "offer any competent medical evidence" to support her malpractice claim where she complained about the

---

[3] Plaintiff testified in his deposition that the reason for his November 5 appointment was a hypoglycemic episode he experienced in the early morning hours of the same day. (*See* Joseph Decl. Ex. F ("Pl.'s Dep. Tr.") 63–64 (Dkt. No. 50-6).)  However, Plaintiff does not recall whether he mentioned the hypoglycemic episode to any medical professional or whether he was sweaty or dizzy at any point during his appointment. (*See id.* at 91.)  Moreover, nothing in Plaintiff's Medical Records notes any recent hypoglycemic incident; indeed, the Records note the reasons for the appointment were a "Pre-Visit Planning done for visit/footcheck" and an opportunity to obtain "medication refills." (*See* Pl.'s Medical Records, at US000012.)  And the Records also state that Plaintiff was "well appearing," demonstrated "no acute distress," and had a "regular breathing rate." (*See id.* at US000013.)  "Where undisputed medical records directly and irrefutably contradict a plaintiff's description of his injuries, no reasonable jury could credit plaintiff's account of the happening." *See Whittle v. Ulloa*, No. 15-CV-8875, 2019 WL 110958, at *3 n.9 (S.D.N.Y. Jan. 4, 2019) (citation, alteration, emphasis, and quotation marks omitted); *see also Vega v. Rell*, 611 F. App'x 22, 25–26 (2d Cir. 2015) (affirming district court's grant of summary judgment where "uncontroverted medical records undercut each" of the plaintiff's "counter-assertions of fact").
    Therefore, even to the extent Plaintiff's testimony could somehow make this case an exception to the general rule that expert medical testimony is required to establish a prima facie medical malpractice case, his factual assertions are undermined by the record and fail to create a genuine dispute of material fact.

quality of care she received in an emergency room and "the instructions given her upon her discharge" (collecting cases)); *Dunn v. Khan*, 880 N.Y.S.2d 653, 655 (App. Div. 2009) (affirming grant of summary judgment to the defendants in a medical malpractice claim where the plaintiff failed to produce admissible expert evidence to rebut the doctor's conclusion that "there was no medical condition which precluded [the decedent's] discharge"); *see also Smith v. Masterson*, 353 F. App'x 505, 508 (2d Cir. 2009) (affirming dismissal of medical malpractice claim at summary judgment where the pro se plaintiff failed to produce any expert evidence to suggest that a decision to treat his dislocated jaw with a particular medical technique did not fall "within accepted standards" or that the treatment was "the proximate cause of [the plaintiff's subsequent] alleged injuries"). And Plaintiff has failed to produce any expert testimony supporting his contention that any medical provider deviated from standard medical care. Plaintiff has also failed to provide any evidence connecting any purported deviation from standard medical care to the alleged "black out" he experienced after his first doctor's appointment. (*See* Pl.'s Medical Records, at US000009.) "[E]vidence that [any alleged] departure [from standard medical care] was a proximate cause of injury" is another necessary element of a medical malpractice claim. *See Junger*, 393 F. Supp. 3d at 321 (citation and quotation marks omitted). Indeed, the record shows that, on the day after the accident, Plaintiff told Dr. Tibbet that he had not eaten the previous day and was not measuring his blood sugar, suggesting that expert testimony would also have been necessary to parse out the various possible sources of causation that ultimately led to Plaintiff's accident. (*See* Pl.'s Medical Records, at US000009.)

"Granting summary judgment to [Defendant] . . . is consistent with several Second Circuit cases affirming the granting of summary judgment in favor of defendants on medical

14

malpractice and negligence claims where plaintiffs—including pro se plaintiffs—failed to present expert testimony . . . sufficient to establish the existence of any genuine issue of material fact . . . ." *Urena v. Yan Wolfson, M.D.*, No. 09-CV-1107, 2012 WL 958529, at *6–8 (E.D.N.Y. Mar. 20, 2012) (italics omitted) (collecting cases) (granting summary judgment where the plaintiff failed to produce any expert evidence that, inter alia, his discharge following a particular procedure was below accepted standards of medical care), *appeal dismissed*, No. 12-1922 (2d Cir. Oct. 9, 2012); *see also Shields v. United States*, 446 F. App'x 325, 326–27 (2d Cir. 2011) (affirming district court's dismissal of a pro se plaintiff's medical malpractice claim for failure to present expert testimony on whether the defendant's actions could have caused the injury at issue). Therefore, Plaintiff's medical malpractice claim is dismissed.

To the extent Plaintiff claims that Beacon Health Center was negligent in hiring, supervising, and/or training its personnel, such a claim would also fail. (*See* Am. Compl. ¶ 12.) This type of claim requires all the ordinary elements of negligence, along with three additional elements: "(1) that the tort-feasor and the defendant were in an employer-employee relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations and quotation marks omitted). In addition to the fatal flaw that Plaintiff has failed to produce any evidence suggesting that Defendant "was on notice" of any of the medical providers' "relevant tortious propensities," *Coffey v. City of New York*, 853 N.Y.S.2d 551, 552–53 (App. Div. 2008) (citation omitted), the claim also fails because Plaintiff has failed to establish an underlying tort, *see Zeak v. United States*, No. 11-CV-4523, 2015 WL 246340, at *3 (S.D.N.Y. Jan. 20, 2015) ("[T]he [defendant] is correct that because the negligent hiring and

15

retention claim is predicated on an underlying tort of medical malpractice, the [c]ourt's prior grant of summary judgment in favor of the [defendant] on that claim vitiates [the p]laintiff's ability to bring this derivative claim." (record citation omitted)) (collecting cases).  Therefore, any derivative negligent hiring, supervising, or training claim is also dismissed.

       2.  "Res Ipsa Loquitor" Claim

It is unclear what exactly Plaintiff intended to assert where he claims that Defendant is "liable . . . under the doctrine of res ipsa loquitor for compensatory and/or punitive damages." (Am. Compl. ¶ 19 (alteration omitted).)  Res ipsa loquitor "is an evidentiary standard, not a cause of action." *Horton v. Greenwich Hosp.*, No. 12-CV-4436, 2014 WL 956468, at *2 (S.D.N.Y. Mar. 10, 2014) (citations omitted).  It "does not create a presumption in favor of the plaintiff but merely permits the inference of negligence to be drawn from the circumstance of the occurrence. The rule has the effect of creating a prima facie case of negligence sufficient for submission to the jury, and the jury may—but is not required to—draw the permissible inference." *Dermatossian v. N.Y.C. Transit Auth.*, 492 N.E.2d 1200, 1204 (N.Y. 1986) (citations omitted). The theory is only applicable where the plaintiff can establish that: "(1) the event [is] of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it [was] caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it [was] not . . . due to any voluntary action or contribution on the part of the plaintiff." *Ebanks v. N.Y.C. Transit Auth.*, 512 N.E.2d 297, 298 (N.Y. 1987) (citations omitted); *accord Mink Mart, Inc. v. Reliance Ins. Co.*, 12 F. App'x 23, 24–25 (2d Cir. 2000).  In the context of medical malpractice actions, "consensus exists . . . that a narrow category of factually simple medical malpractice cases [that] require[] no expert" may "enable the jury reasonably to conclude that the accident would not happen without negligence." *Kambat v. St. Francis Hosp.*, 678 N.E.2d 456, 459 (N.Y.

1997).  A common example is "where a surgeon leaves a sponge or foreign object inside the plaintiff's body."  *Id*. (collecting cases).  This Court has already determined that Plaintiff's medical circumstances were not so obvious that expert testimony is not necessary to show that any provider deviated from standard medical care.  Therefore, Plaintiff's case is also ineligible for the application of the res ipsa loquitor doctrine.  Moreover, this mechanism is simply not applicable in rebutting a motion for summary judgment.  *See Horton*, 2014 WL 956468, at *2 (explaining that res ipsa loquitor "is not a cause of action separate from negligence; it is instead one of the ways to establish negligence" (citation and quotation marks omitted)).  Therefore, Plaintiff's second cause of action does not recite any cognizable legal claim and is dismissed.

    3.  "Prima Facie Tort" Claim

In the third cause of action, Plaintiff alleges that Defendant "is liable to [] Plaintiff under the doctrine of Prima Facie Tort for compensatory and/or punitive damages."  (Am. Compl. ¶ 25.)  "Under New York [l]aw, there are four elements required to support a claim for prima facie tort: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful."  *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014) (citation and italics omitted).  "The first element requires 'disinterested malevolence,' which means that 'the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.'"  *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304–05 (S.D.N.Y. 2002) (citation omitted); *see also Pandian v. N.Y. Health & Hosps. Corp.*, 863 N.Y.S.2d 668, 669–70 (App. Div. 2008) (dismissing the plaintiff's prima facie tort claim where the plaintiff failed to allege that malevolence was the defendants' sole motivation); *Curiano v. Suozzi*, 480 N.Y.S.2d 466, 469 (App. Div. 1984) (explaining that the "sole" motivation for the defendant's actions

must be one of malevolence). Furthermore, a prima facie tort claim is "highly disfavored in New York." *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000) (citation omitted).

Simply put, Plaintiff has neither alleged any facts nor provided *any* evidence that any medical provider's conduct was "done with the sole intent to harm." *Hall*, 185 F. Supp. 2d at 305 (citation and quotation marks omitted). At most, Plaintiff has alleged that his medical providers failed to predict an upcoming diabetic episode. Even for that claim, Plaintiff has failed to provide any medical evidence suggesting that the medical providers behaved outside of standard medical practice, much less *intentionally* so. Without plausibly alleging or presenting any evidence that any provider acted with malevolence, Plaintiff cannot sustain a prima facie tort claim. Moreover, because the facts alleged—at *most*—could have on their face given rise to a medical malpractice claim, Plaintiff's ability to allege a prima facie tort claim collapses as a matter of law. "[O]nce a traditional tort is established[,] the cause of action for prima facie tort disappears." *Chen v. United States*, 854 F.2d 622, 628 (2d Cir. 1988) (quotation marks omitted) (collecting cases). Therefore, Plaintiff's prima facie tort claim fails, not only because of the sufficiency of the pleadings and the record, but also because an alternate action in tort already exists. *See Caldwell v. Am. Basketball Ass'n, Inc.*, 825 F. Supp. 558, 577 (S.D.N.Y. 1993) ("[A]n action for prima facie tort will not lie where the allegations fall within the scope of a traditional tort theory." (citation and italics omitted)), *aff'd*, 66 F.3d 523 (2d Cir. 1995); *Belsky v. Lowenthal*, 405 N.Y.S.2d 62, 65 (App. Div. 1978) ("It would be unwise . . . to allow every unrealized cause of action to be tortured into a prima facie tort action, . . . thus affording a forum for a never ending source of new litigation. Every failed suit for medical malpractice could conceivably then be made the basis of a prima facie tort."); *Fada Indus., Inc. v. Falchi Bldg. Co., L.P.*, 730 N.Y.S.2d 827, 841 (Sup. Ct. 2001) (explaining that a plaintiff may not "merely

reiterate[] the allegations asserted under" other "causes of action" in support of an alleged prima facie tort (citation and quotation marks omitted)).

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 48), enter judgment for Defendant, mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

DATED:	May 27, 2020
	White Plains, New York

	_____
	KENNETH M. KARAS
	UNITED STATES DISTRICT JUDGE